**BOWLES, Price Administrator, v. SKAGGS.**

**No. 10018.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 12, 1945.

Nathan Siegel (no address) (George Moncharsh, Fleming James, Jr., David London, and Samuel L. Cohen, all of Office of Price Administration, of Washington, D. C., Samuel J. Weiner, of Cleveland, Ohio, and Fritz Krueger, of Louisville, Ky., on the brief), for appellant.

Edward A. Dodd, of Louisville, Ky. (Edward A. Dodd, of Louisville, Ky., on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and RAYMOND, District Judge.

SIMONS, Circuit Judge.

The principal question presented by the appeal is said to be one of first impression. It is whether the district court is empowered, under § 205(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 925(a), to enforce compliance with a provision of § 4 of the Act, 50 U.S.C.A.Appendix § 904, by ordering restitution of overcharges made by a seller in violation of such section. The court answered this question in the negative and dismissed the proceeding, and the OPA Administrator appeals.

The appellee is the duly appointed administrator of the estate of his deceased father, and proceeded to sell certain personal property of the estate in order to pay the debts of his decedent. Included in such personal property was a household Westinghouse refrigerator which, on January 29, 1944, was sold by the appellee through a public auctioneer for the sum of $352.50. On October 2, 1944, the appellant filed suit against the appellee alleging that the sale came within the purview of Maximum Price Regulation 139 which placed a ceiling price on the refrigerator of $76.83. The appellant did not seek an injunction to restrain future sales, but sought an order of restitution requiring the appellee to restore to the purchaser of the refrigerator the difference between the sale price and the ceiling price. His complaint was dis-

missed upon the sole ground that § 205(a) of the Act limits the court to the granting of an injunction to restrain future violations of price regulations promulgated by the Administrator, and does not include power to grant an order of restitution.

Before considering the principal question in the case in respect to the authority conferred upon the Administrator and the court by § 205(a), it is necessary to note a preliminary issue raised in the brief of the appellee. Whether it was pressed upon the district judge we are not advised. His memorandum opinion does not refer to it and the appellant's brief gives us no help. We consider it, however, under the familiar rule that a judgment may be right even though based on the wrong reason.

■ The appellee says that as administrator of his father's estate he is, under Kentucky law, an officer of the court; that as such officer it is his duty to pay the debts of the estate out of the personal property belonging to it; that it was not necessary for him to procure a court order to sell the refrigerator because he was empowered to do so by both Common Law and Kentucky statutes; that it is his duty to realize the best price obtainable for the property, and if he fails in this duty he is personally liable to creditors and others interested. Finally, he says, that Revised Supplementary Order No. 10, (§ 1), promulgated by the appellant on the 14th day of August, 1944, excludes from the operations of price schedules and maximum price regulations, all sales held by a duly qualified executor or administrator in liquidating the assets of a decedent pursuant to applicable state law. It is to be noted, however, that the sale here in question was made on January 29, 1944, and that Supplementary Order No. 10 was not issued until August 14, 1944, to become effective August 19, 1944. It is not, by its terms, made retroactive. Section 2 (c) provides that exemptions do not extend to judicial sales in respect to commodities for which price regulations or orders establish a specific dollar and cents maximum price when sold by a seller other-wise affected, and § 2(d) includes within such exceptions used household mechanical refrigerators covered by MPR 139. He urges the applicability of Supplementary Order No. 10 upon the authority of Bowles, Adm'r v. Texas Liquor Control Board et al., 5 Cir., 146 F.2d 155. That case, however, did not require consideration of the exceptions to the exemptions established by the Supplementary Order. Moreover, it was there specifically held that the revised order constituted the rule of law by which the appeal must be decided because an injunction operates in futuro and the propriety of future sales must be tested by it. In the present case no injunction is asked for, and the mandatory order sought is not in respect to future sales but solely in respect to a sale made prior to the effective date of the supplementary order. Our conclusion, therefore, is that the order does not relieve the appellee from the application of any remedy permissible under § 205(a) even were we to hold that the appellee is a judicial officer.

The principal question in the case requires a construction of § 205(a) of the Act. It is recited in the margin.[1] It will be noted that the Administrator may make application to the court "for an order enjoining such acts or practices," or "for an order enforcing compliance with such provision." It will also be noted that the court is thereby empowered to grant "a permanent or temporary injunction, restraining order, or *other order.*" No consideration appears to have been given to the phrase "or for an order enforcing compliance with such provision." It would appear to be somewhat difficult to exclude from the scope of orders enforcing compliance, an order that compels restitution to a purchaser of the excess of a sale over a ceiling price. Such an order would seem to be, in final analysis, an order enforcing compliance even though less effective, perhaps, as a deterrent than the provisions of § 205(e) which give to the buyer, under certain circumstances, a right of action for treble the amount by which the consideration exceeds the applicable maximum price.

---

[1] "(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

The controversy concerns itself mainly, however, with the construction to be placed upon the phrase "or other order" in the last line of § 205(a). The appellee urges, and its argument prevailed, that only such orders are within the connotation of the phrase as are needed to make the injunction order practicable and understandable in its application. This contention would seem to be tenuous. Certainly were the phrase entirely eliminated one could hardly deny the power of the court to amend and clarify an injunctional order which concededly it has power to grant, nor to punish for contempt because of its violation. Nothing in the section contained, were such phrase omitted, would seem to confine the court to the original form or content of the injunction or restraining order, or to support an inference that having once granted it, the power is at an end however ineffective, impracticable and ambiguous the original order might prove to be. Manifestly, then, the phrase "or other order" must have broader significance than contended. .

 It is undoubtedly within the power of equity courts to mould their remedies to the needs of particular situations, and nothing in the section indicates the intent of the Congress to restrict such powers. Injunctions are, of course, most commonly prohibitory, and such injunctions operate in futuro, but equity courts have, from early times, when equitable considerations have required the restoration of a status quo, issued mandatory injunctions or granted other affirmative relief responsive to the needs of parties invoking equity. Certainly the public interest involved does not compel a limitation upon the normal and historical power of equity. Hecht Co. v. Bowles, Adm'r, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. There it was said, page 330 of 321 U.S., page 592 of 63 S.Ct., 88 L.Ed. 754, "It is therefore even more compelling to conclude that, if Congress desired to make such abrupt departure from traditional equity practice as is suggested, it would have made its desire plain." This was in reference to a contention that the district court had no discretion as to whether or not to issue an injunction but was required to do so if the proper facts were established. The court resolved the ambiguities of § 205(a) "in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect. United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211, and cases cited." The fact that the court pointed to a type of order as within the connotation of "other order," does not support an inference that the inclusion of the one necessarily excludes all others.

By our view that the court was empowered to exercise normal equity discretion in fashioning its remedy, we do not intend to suggest that the court is compelled to grant restitution. No discretion was here exercised. The court concluded it had no jurisdiction to entertain the petition. So deciding, the matter was rightly at an end.

 Another contention of the appellee is that since § 205(a) refers to acts and practices in the plural, an injunction or other remedy must be denied where the basis for the complaint is but a single act, not likely to be repeated. It is urged, in other words, that the remedy authorized is limited to restraint of a course of conduct, actual or threatened, and has no application to an isolated violation. We are unable to accept the construction. The plural in this connotation necessarily includes the singular, and an isolated transaction, in view of the general remedial purposes of the act in a time of public emergency, may be as inimical to the public interest in a given case as repeated acts and practices would be in another. We are unable to conclude that the violator of a price regulation is in every case "entitled to one bite."

 Finally it is urged that since § 205 (e), as originally enacted, gives the buyer of a commodity for use or consumption other than in the course of trade or business, exclusively an action for treble the amount by which the consideration exceeds the applicable maximum price, the Administrator is thereby precluded from effectuating the purposes of the Act by an action to enforce compliance by way of restitution. The purchaser in this case concededly bought the refrigerator for use or consumption other than in the course of trade or business. He, of course, is the only one who may sue for treble damages under § 205(e), but this, we think, does not foreclose the Administrator from exercising remedies on behalf of the public under §

205(a). An order of restitution is not a judgment for damages or for penalties. It compels compliance and is restoration of the status quo which falls within the recognized power of a court of equity. It would be just as reasonable a construction to say that since § 205(e) is available exclusively to the purchaser, the Administrator, by a parity of reasoning, is barred from seeking an injunction as well as an order of restitution. The Administrator acts in the public interest—the purchaser in his own. The remedies are not irreconcilable. There are undoubtedly many instances where the relationship of buyer and seller is such that the buyer is deterred from vindicating his own and therefore also the public right. To deny to the Administrator power to act in cases where, as here, restitution rather than a prohibitory injunction is the only practical remedy, would be to subvert the purposes of the Act.

It has never been thought that the right of an illegally discharged employee to sue for damages precluded the National Labor Relations Board from including in its affirmative remedies the restoration of employees with back pay. Indeed, it has been said that even if Congress had omitted from § 10 the phrase "including reinstatement of employees with or without back pay," there would be no doubt that an order of reinstatement with back pay would have been held to be an order effectuating the policy of the Act. N. L. R. B. v. Waumbec Mills, 1 Cir., 114 F.2d 226, 234, 235. Like constructions have been given to provisions of other administrative and regulatory statutes. United States v. Adler's Creamery, Inc., 2 Cir., 110 F.2d 482, certiorari denied 311 U.S. 657, 61 S.Ct. 12, 85 L.Ed. 421; Walling v. Miller, 8 Cir., 138 F.2d 629. It must be remembered that the orders of regulatory bodies are in the public interest—they are not in the nature of suits at common law and frequently authorize remedies in derogation of the common law. Virginia Electric & P. Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568; N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 48, 49, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Agwilines, Inc., v. N. L. R. B, 5 Cir., 87 F.2d 146; N. L. R. B. v. Colten, 6 Cir., 105 F.2d 179, 182; N. L. R. B. v. Thompson Products, Inc., 6 Cir., 130 F.2d 363, 367.

Reversed and remanded for trial.